**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **H.M., L.T., K.M., M.B., G.B., T.B., and A.B.**

**No. 20-0951** (Berkeley County 20-JA-14, 20-JA-15, 20-JA-16, 20-JA-17, 20-JA-18, 20-JA-19, and 20-JA-20)

**MEMORANDUM DECISION**

Petitioner Mother L.M.-J., by counsel Mary Binns-Davis, appeals the Circuit Court of Berkeley County's October 28, 2020, order terminating her parental rights to H.M., L.T., K.M., M.B., G.B., T.B., and A.B.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Jeffrey K. Matherly, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in (1) adjudicating her as an abusing parent, (2) denying her request for a post-adjudicatory improvement period, and (3) terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2020, the DHHR filed an abuse and neglect petition alleging that petitioner and her boyfriend abused and neglected petitioner's seven children. The DHHR alleged that petitioner left the three youngest children, the oldest of whom was four years old, home alone while she and the boyfriend went shopping for food. According to the petition, law enforcement responded to a call from a maintenance man that children had been left at petitioner's home unsupervised. The DHHR alleged that law enforcement officers found the conditions of the home

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

to be deplorable and contacted Child Protective Services ("CPS") workers. According to the petition, law enforcement officers and CPS workers took several photographs and observed trash, soiled diapers, and rotting food scattered on the floor amidst toys, clothing, and other items. The DHHR further alleged that the kitchen sink was filled with black water, that there was little to no food in the home, and that the children indicated they had not eaten all day. The DHHR also alleged that the toilet was filthy and the children reported defecating in plastic bags and urinating in the bathtub, which was also dirty and filled with an unidentifiable substance. The petition further provided that the children reported they did not bathe and one of the children had mold growing in her hair. The DHHR also alleged that dirty mattresses were stacked and strewn throughout the home and the children reported that they did not have designated sleeping places but instead slept on whatever mattress was available. The DHHR alleged there were additional safety hazards in the residence, including a missing stair rail and exits that were blocked by trash and other items. The DHHR further provides that, petitioner stated the residence had only become dirty overnight and that she and her boyfriend purchased cleaning supplies for the home during their shopping trip. Petitioner also told the CPS worker that the home was unclean because she was depressed due to the recent death of her brother. Finally, the petition notes that law enforcement officers arrested petitioner for seven counts of felony child neglect based on the lack of supervision and the deplorable conditions of the home. The DHHR alleged that petitioner subsequently posted bond and moved to Maryland.

After several continuances, the circuit court held an adjudicatory hearing in June of 2020. Petitioner failed to appear for the hearing but was represented by counsel. Petitioner's counsel moved the circuit court to continue the hearing due to petitioner's absence. However, petitioner's counsel conceded that petitioner was aware of the hearing and that she did not know why petitioner failed to appear. The circuit court denied the motion, finding that petitioner had proper notice of the hearing. The circuit court then proceeded with the hearing wherein two law enforcement officers testified as to the allegations in the petition. Specifically, the officers testified that they responded to a call concerning three preschool-aged children being left unsupervised at a home. The officers testified that the children had been left alone for one to two hours before petitioner and the boyfriend returned to the home. The officers testified that petitioner claimed she had left the children in the care of the boyfriend's brother, but she was unable to explain why he was absent from the home. The officers further testified that petitioner failed to provide any means of contacting the boyfriend's brother to confirm her assertion. The officers also testified as to the horrendous conditions in petitioner's residence. One officer testified that he estimated it would take several weeks for a home to deteriorate to its condition, including his observation of rotten food, mold, and dirty diapers that had dried completely. The officer also testified that he had visited hundreds of unkempt homes in his career and that petitioner's home was one of the "worst-conditioned" homes he had ever seen. Next, a CPS worker testified that petitioner acknowledged the home was not in good condition but stated that the home was normally clean. The worker testified that petitioner's home could not have become deplorable overnight. Finally, the CPS worker testified that petitioner eventually conceded that the home had been in its current condition for a "few weeks." In light of the evidence, the circuit court found that petitioner's home had been incredibly filthy for a lengthy period of time and was among the filthiest homes he had seen during his career. The circuit court found it "shocking" that the children were living in such conditions.

The circuit court further found that petitioner's assertions that she and the boyfriend were going to clean the home when they returned from the store to be incredible given the level of filth in the residence. The circuit court also made a negative inference regarding petitioner's failure to appear and to present any evidence in opposition to the allegations in the petition. As a result, the circuit court adjudicated petitioner as an abusing and neglecting parent and scheduled a dispositional hearing for July of 2020.

In July of 2020, the circuit court held a dispositional hearing wherein petitioner failed to appear. As a result of petitioner's absence, the circuit court continued the dispositional hearing. The next month, the circuit court held the final dispositional hearing wherein petitioner appeared and moved for a post-adjudicatory improvement period while the DHHR and guardian moved for the termination of petitioner's parental rights. At the hearing, a CPS worker testified that petitioner failed to participate in any services during the pendency of the proceedings and moved to Maryland despite being cautioned by the DHHR that it would be unable to provide payment for most service providers located outside West Virginia. The CPS worker acknowledged that petitioner did participate in some visits with the children but noted that her visits were suspended after petitioner failed to appear for several scheduled visits. The CPS worker further testified that petitioner's failure to appear at the adjudicatory hearing and the initial dispositional hearing indicated her lack of commitment to reunification with the children. Finally, the CPS worker described her efforts to communicate with petitioner during the case as "difficult," and that she felt like petitioner was "screaming through emails" at her.

Next, petitioner testified that her home was "a bit of a wreck" and attributed her lack of housecleaning to depression stemming from her grandmother's poor health. Notably, petitioner previously told CPS workers that she had not cleaned the residence because her brother had recently died. Petitioner further testified that at "any other time the house was always clean" and was only dirty because she did not clean the previous night before law enforcement and a CPS worker visited her home. Petitioner also testified that she has a "history of being depressed easily" and that she gets depressed when someone in her family dies. Petitioner denied otherwise being routinely depressed. Petitioner testified that she was willing to move back to West Virginia to obtain services but stated that she was waiting until the dispositional hearing to sign up for services. Petitioner acknowledged that she had an active medical card which would enable her to obtain services on her own. Finally, petitioner testified that she was upset that her visits with the children had been suspended. Petitioner admitted she missed at least four visits and failed to cancel them in advance. Petitioner testified that she missed the visits due to work and was unaware her visits could be suspended due to her failure to regularly exercise visitation.

At the conclusion of the hearing, the circuit court denied petitioner's motion for an improvement period. In light of the evidence presented at the dispositional hearing, the circuit court found that there was no evidence petitioner did not receive notice of the adjudicatory and initial dispositional hearings, yet she failed to appear for both. The circuit court also made numerous findings regarding the extreme filth in petitioner's home at the time of the children's removal. The circuit court further found that petitioner denied the issues of neglect upon which she had been adjudicated. Finally, the circuit court found that petitioner had a lack of commitment

to the children, subjected the children to severe neglect, and had a profound lack of insight into that neglect. Based upon this evidence, the circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that it was in the best interests of the children to terminate petitioner's parental rights.[2] The circuit court entered an order reflecting its decision on October 28, 2020. Petitioner appeals from this order.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

First, petitioner argues that the circuit court erred in adjudicating her as an abusing and neglecting parent. According to petitioner, the circuit court's finding that she failed to provide necessary food, clothing, shelter and medical care for the children was "against the weight of the evidence which fell far short of the clear and convincing standard" that the DHHR must meet. Petitioner argues that the circuit court's adjudicatory and dispositional orders were "largely devoid of findings of fact or conclusions of law" sufficient to justify the termination of her parental rights. As such, petitioner argues there was insufficient evidence to adjudicate her as an abusing parent. We disagree.

We have previously held as follows:

At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected . . . . The findings must be based upon

---

[2]The father of H.M. and K.M. is a nonabusing parent. The permanency plan for H.M. and K.M. is to remain in their father's custody. The father of M.B., G.B., T.B., and A.B. had his parental rights terminated during the proceedings below. According to the parties, the permanency plan for these children is adoption in their current foster home. The father of L.T. had his parental rights terminated below. The permanency plan for L.T. is adoption in a foster home.

conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W. Va. 538, 544, 759 S.E.2d 769, 775 (2014). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Id*. at 546, 759 S.E.2d at 777 (citation omitted). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* (citation omitted). West Virginia Code § 49-1-201 defines an "abusing parent" as a "parent . . . whose conduct has been adjudicated by the court to constitute child abuse or neglect as alleged in the petition charging child abuse or neglect." Additionally, pursuant to West Virginia Code § 49-1-201, a neglected child means a child whose

> physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care, or education, when that refusal, failure, or inability is not due primarily to a lack of financial means on the part of the parent, guardian, or custodian.

Having reviewed the record, we find that sufficient evidence existed to adjudicate petitioner as an abusing and neglecting parent. At the adjudicatory hearing, two law enforcement officers testified that they were called to petitioner's home after a maintenance man found petitioner's three youngest children—the oldest of whom was four years old at the time—at home alone. Both officers testified that the children had been with them or the maintenance man for one to two hours before petitioner returned home. Upon her arrival, petitioner claimed her boyfriend's brother was supposed to have been babysitting the children. However, petitioner failed to provide any information to verify her claim. While investigating the unsupervised children, the law enforcement officers and a CPS worker found petitioner's home to be in deplorable condition. The DHHR presented photographs of the home as evidence for purposes of adjudication. One of the officers testified that he had seen hundreds of homes in poor condition during his career, and that petitioner's home was one of the worst homes he had seen. All three recounted that the home was unsafe and unsanitary for the children. As a result of the conditions inside the home, the officers arrested petitioner for seven counts of felony child neglect. Although petitioner contends that the home was dirtied overnight, both officers and the CPS worker testified that based upon the level of filth, rotting food, and age of garbage in the residence, the home was likely in poor condition for weeks.

Moreover, petitioner failed to appear in person for her adjudicatory hearing and produced no contradictory evidence at the adjudicatory hearing to rebut the allegations against her. As a result, the circuit court made a negative inference on the record based upon the same.

> Because the purpose of an abuse and neglect proceeding is remedial, where the parent or guardian fails to respond to probative evidence offered against him/her during the course of an abuse and neglect proceeding, a lower court may properly

5

consider that individual's silence as affirmative evidence of that individual's culpability.

Syl. Pt. 2, *W. Va. Dep't of Health & Human Res. ex rel. Wright v. Doris S.*, 197 W. Va. 489, 475 S.E.2d 865 (1996). Although petitioner claimed at the time of the petition that she was purchasing cleaning products when the police arrived at her home, the circuit court found that no amount of cleaning products would have been sufficient to rid the home of the unsafe and unsanitary conditions observed by the responding law enforcement officers and CPS worker.

Additionally, petitioner's claim, that the circuit court failed to make findings of fact or conclusions of law to support its finding that petitioner was an abusing and neglecting parent—is incorrect. The circuit court made several findings at the adjudicatory hearing. First, the circuit court found that petitioner neglected the children by leaving them unsupervised and noted that petitioner failed to provide any contact information for the boyfriend's brother, who she claimed had been supervising the children. The circuit court also found that petitioner was neglectful due to the "horrific condition" of the home. More specifically, the circuit court found that petitioner's home had been "incredibly filthy for a long time," and that it had never seen a house as filthy as petitioner's home. Further, the circuit court found that the level of filth that the children were living in was "shocking" and the fact that one of the children had mold growing in her hair was "shocking to [the] conscience." While the circuit court did not detail most of these findings in its orders, Rule 27 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings clearly states that "[a]t the conclusion of the adjudicatory hearing, the court shall make findings of fact and conclusions of law, in writing *or on the record*, as to whether the child is abused and/or neglected in accordance with W. Va. Code § 49-4-601(i)." (Emphasis added). As the analysis above makes clear, the circuit court made detailed findings on the record in regard to petitioner's abusive conduct and summarizes them in the order on appeal. Therefore, we find no error in the circuit court's adjudication of petitioner as abusing and neglecting the children.

Next, petitioner argues that the circuit court erred in denying her a post-adjudicatory improvement period because she detailed her efforts to reestablish visitation with the children, sought parenting classes, and relocated to West Virginia to work toward reunification. Petitioner argues that these efforts demonstrate that she could have substantially corrected the conditions of abuse and neglect if granted an improvement period. We find petitioner's arguments unavailing.

This Court has held that an individual "charged with abuse and/or neglect is not unconditionally entitled to an improvement period." *In re Emily*, 208 W. Va. 325, 336, 540 S.E.2d 542, 553 (2000). West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the[y are] likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the . . . parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (citation omitted). However, the circuit court has discretion to deny

an improvement period when no improvement is likely. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). Further, we have previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted).

Contrary to petitioner's argument, we see no error in the circuit court's determination that petitioner was not likely to fully participate in an improvement period. The circuit court found that petitioner failed to acknowledge or take any responsibility for the conditions that led to the abuse and neglect of the children. Specifically, petitioner continued to deny the deplorable conditions of the house at the dispositional hearing when she testified that the residence was dirty because she did not clean it on the previous night, but had regularly cleaned the home before that. While petitioner argues that she proved she was likely to participate in an improvement period by being willing to participate in parenting classes and visiting with the children, these actions alone could not have been successful without petitioner's recognition of her abuse and neglect of the children. Further, petitioner moved to Maryland during the proceedings despite a warning from the DHHR that it could not provide services to her if she moved out-of-state. Although petitioner testified that she recognized living in Maryland posed an obstacle to participating in services and planned to relocate to West Virginia, she waited until the dispositional hearing to do so. Additionally, petitioner's visitation with the children was suspended due to her repeated missed visits with them. Finally, petitioner failed to appear for her adjudicatory and initial dispositional hearings, despite being provided notice. Given this evidence, we find no error in the circuit court's decision to deny petitioner a post-adjudicatory improvement period.

Next, petitioner takes issue with the timeframe from adjudication to termination, arguing that she should have been given additional time and an opportunity to demonstrate that she could correct the conditions of abuse and neglect. However, we have previously held that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4, in part (citation omitted). Further, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Here, the circuit court made the appropriate findings based upon substantial evidence. On appeal, petitioner cannot establish that these findings were in error. As such, we find no error in the termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 28, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: June 22, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton